Johnston, Oh.
delivered the opinion of the Court.
*165 The second ground of appeal was not pressed in the argument ; and is clearly untenable, according to our decisions.
The only point made under the first ground, was that the decree should not have declared Mrs. Holloway, the life-tenant, liable to re-produce, at the expiration of her life-estate, the same amount of corn which she received with the estate, or account for the value of the deficiency, (a)
It is important in the first place to determine whether the testator incended to give her the property devised to her for life, with a view to her enjoyment of it in kind, or whether the gift was made with reference to the value and not the specific enjoyment of it.
Where the benefit contemplated by the donor, is the mere value of the property; the long settled rule is so to dispose of the property, that the interest of both life-tenant and remainder-man shall be protected, and neither be promoted at the expense of the other. This is accomplished by the sale of the property, giving the interest of the proceeds to the life-tenant during life, and turning over the capital to the remainder-man upon the life-tenant’s death.
If the personal enjoyment of the property, itself, was intended ; a sale of it cannot be ordered, because that would defeat this intention: but, in such cases, the tenant for life is to hold and enjoy the property given, under a liability, however, to render such an account for whatever part of it may not be forthcoming to the remainder-man, as the rules of law impose, respect being had to the nature and character of the property which has been lost.
Where the bequest is specific in terms, there can of course be no doubt as to the intention. There may be doubt where the bequest is residuary in form. Where that is the case, the general rule is to regard it as evidence that the intention was not to *166 confer the personal enjoyment of the property in kind, but the mere benefit arising from its value. But this rule is ancillary, only; and is employed solely for the purpose of discovering the true intention of the testator : and if, by the context of the will, or in any way from its face, the mind is persuaded (notwithstanding the residuary form of the bequest) that a personal enjoyment was intended, such will be the construction, and effect will be given to it with all its incidents.
The will of George Holloway, under which the questions, made in this case, arise, manifests an intention that his widow should enjoy the property, itself, given to her for life; and a directly different intention as respects the remainder-men. The direction that it be sold at her death,.excludes the idea that it was to be converted before, or that it was to be taken from her; and the direction that the proceeds of the property, and not the property itself, be given to the remainder-men, is inconsistent with the notion that they were designed to have any interest in it beyond the money to arise from the sale.
To these considerations may be added the relations which these two parties bore to the testator, and the consequent interest he may be supposed to have felt for them respectively.
There are other stray expressions throughout the will, not taken notice of in the decree; which, separately, may not have much influence, but which, taken together and added to the considerations already commented on, serve to strengthen the conclusion to which I have come.
This being the construction, then; — that the property was specifically given to Mrs. Holloway, we are prepared to enquire whether her estate is bound to account for the corn which she received.
This was but a part of the body of the property given her for life. That property consisted of land, slaves, horses, cattle, hogs, farming utensils, household furniture, &c.
The personal property falls under two general heads: (1) such as was consumable in the use of it, and (2) such as was not so consumable.
*167 For instance, tinder the former head among other things must be reckoned, provisions, — including the corn which is the subject of litigation in this case. Under the second head might fall, among others, plate, furniture, &c.
But each of these classes may be further divided into two descriptions, according to their qualities, and distinguished as reproductive or not re-productive.
Thus; under the first head, of articles consumable in the use, may be ranked not only, those of corn, wine, &c. — which are wholly consumable, and entirely destitute of the quality of reproduction; but, also, flocks, which, besides sustaining themselves by natural increase, yield a surplus for consumption.
Again; under the second head, of property not consumable in the use, we have not only plate, furniture, &c.; which are perfectly incapable of increase; but, also, slaves, which while strictly inconsumable, are eminently reproductive by procreation.
Now, the liability of a life-tenant for these different kinds of property, separately considered, is regulated by law, according to the specific qualities of the property itself.
For property entirely consumable in the use, and entirely destitute of the power of reproduction, the life-tenant is not accountable at all. It is incapable of being limited in remainder, where it is given to be used in kind. The use of it necessarily consumes it, and there is nothing left upon which the limitation can attach. This is the doctrine of all the cases : and necessarily so, because, upon principle, no other doctrine can be predicated of such property.
For property not consumable, but at the same time incapable of increase or reproduction, such as plate, &c. the liability of the life-tenant is restricted to the mere surrender of it to the remainder-man, who must take it with such deterioration as may have arisen from the reasonable use of it: — for any abuse, or for the wanton destruction of the property, the life-tenant is responsible.
For flocks and herds, consumable but reproductive, the rule is still different. The life-tenant is entitled to all the increase *168 beyond what is necessary to keep up the stock; and, therefore, is bound to the exercise of extraordinary diligence for keeping it up and delivering it over, undiminished, to the remainder-man. I will not say that he is bound, at all hazards, for the original stock; for the relation he bears to the remainder-man is that of trustee, — a relation of confidence — and though he is prima facie bound for the property, and the burden must be upon him to show diligence and integrity, in the performance of his duties, — yet it is not clear, upon principle, that he is liable if he does shew fidelity to his trust, and that the flock has perished, not by his fault, but by the act of God, — as by pestilence, earthquake, or other unavoidable providence.
A still different rule exists as to slaves: reproductive, but not consumable. The increase of these do not belong to the life-tenant, so as to enable him to appropriate them beyond the term of his life. They follow the status of the original stock slaves, and are his as long as the stock slaves are his: — during his life:— at his death both the stock slaves and the increase go over to the remainder-man, as they stand: and the life-tenant is only accountable for such as remain; unless he has diminished their number, or the value, by his misconduct. For loss occasioned by the act of God, he is not responsible.
Upon these principles the accountability of a life-tenant is governed, where these articles of property are given to him, as separate things. The property is taken up in detail, and the degree of his accountability is suited to the character of each article.
It must be observed, however, that the ground of accountability is the trust character of the life-tenant; and it is applied as the fundamental principle to each detached article of property, though it leads to different results, according to the qualities of the property itself.
If we were to take up the things comprised in the bequest to Mrs. Holloway, and consider them separately, it follows from what I have said that she must be excused from liability for the corn; which was consumable in the use.
*169 But there is another method of considering the subject: in which the entire mass of property given to her may be regarded as one gift; and in the investigation of the subject in this way, also, the same principle of trusteeship applies.
This method appears to have been first broached by Mr. Justice Nott in Patterson vs. Devlin (a) and subsequently applied by Chancellor Harper, in Robertson vs. Collier. (b)
Says Judge Nott ; — “ There is another view of the subject which deserves consideration, and which is somewhat peculiar to the situation of this country. Lands are sometimes given to one for life, together with the slaves, stock of horses, cattle, plantation tools, and provisions; with a limitation over. In such a case, the perishable articles cannot be considered as belonging, absolutely, to the tenant for life; — neither can they be sold, because they are necessary for the preservation of the estate. The tenant for life must, therefore, be considered as a trustee for the remainder-man; and must preserve the estate with all its appurtenances, in the situation in which he received it.” “ The tenant for life will be entitled to the increase of the stock and the rents and profits of the land: — but he must keep up the stock of cattle, horses, provisions and implements of husbandry, in the condition in which he received them: — for although some of the articles may be consumable in their use, and others are wearing out, yet, when taken all together, being .reproductive, the estate must be made to keep up its own repairs.” •
Chancellor Harper, after quoting these observations, adds:— “ These views are so full and explicit, that little need be added to them. The principle is the same, though extended in its application, by which a tenant for life, in England, is foi bidden to waste the estate; and is required to make ordinary repairs, — or any other tenant is required to keep up the original stock. The ■ tenant for life is entitled to the use of the estate; but it is such ■use as a prudent proprietor would make of his estate. The profit.of an estate is the nett income, after defraying all neces- ‘ ' *170 sary expenses. Thus the relative rights of the tenant for life and remainder-man, will be the same whether the estate be sold and the proceeds vested, or retained in kind. If at the termination of the life estate, all the articles of the sort mentioned are not in as good condition as when he received it, the tenant must make good the deficiency.”
I fully assent to so much of these opinions as place the responsibility of the tenant for life upon the footing of a quasi trustee, whose duty it is to preserve the estate for the remainder-man ; and makes the test of his fidelity the care and attention which a prudent owner would exercise over his own property. This is the true ground; and it applies not only to a tenant for life of an estate, as an entire subject, but to one to whom detached articles of property are given by the same tenure. Each is responsible for prudent and judicious management; and neither of them is at liberty to deteriorate the property by managing it ,for his own benefit, at the expense of the remainder-man.
But-it ^eems to me, that the distinction which is justly taken in the cases of Patterson vs. Devlin and Robertson vs. Collier between an entire estate, given, as an unity, for life and limited in remainder, and the gift and limitation of specific articles of property, in the same way, — is not carried out by the decisions made in these cases; — by which the account is directed to be taken, not of .the whole estate, as one subject, but of its component parts, in detail. Nor does it appear to me entirely consistent with the principle laid down; i. e. — that the fidelity and responsibility of the trustee are to be tested by his prudent management of the whole estate; — to make him responsible for particular parts, which may happen to be deficient notwithstanding such management; and, indeed, where the particular deficiency may have arisen from the prudent management of the whole estate. Nor am I satisfied that either reason or principle require that the trustee, though he may have, upon the whole, improved the estate, is responsible because he does not deliver it over, in the exact plight, or condition, in which he received it.
*171 There are I think subsequent decisions in which the doctrines of these cases have been modified: but they have not been referred to in argument, and I cannot find them.
I think the inquiry should be made into the particulars of the estate and their value, at the time the remainder takes efiect, for the purpose of discovering whether that which is to go over is substantially the same estate which was received by the life-tenant, and of the proper value, and whether, upon the whole, it is in as good a plight (though not in the exact plight) as when the life-tenant took possession. If these conditions be fulfilled; where is the ground for charging the life-tenant?
One species of stock may have been diminished, while another has been increased: and so far from its being proof of ill husbandry, it may be evidence of real judgment to have made-the alteration. Shall the remainder-man take the benefit of the. improvement, and require an account of the minor loss which it occasioned ?
Suppose, again, the implements of husbandry on the plantation, when the life-tenant took possession, were of a character utterly un suited to the proper culture of the land: suppose there was a superabundance of plow-horses; suppose the wagons and carts were deficient, and manure could not be collected or spread in requisite quantities; would it be bad husbandry, — or would it be injurious to the estate, — to convert the surplus horses into proper instruments for cultivating and keeping up the land, and at the same time diminish the expenses of the plantation? Will no other rule secure the fidelity of the trustee, than to confine him to pre-existing methods of culture, and exclude him from the advantage of all agricultural improvement, by requiring him to re-produce the plantation, with all its appurtenances, (though merely ancillary) in the precise shape' in which he received it ?
In a series of years, a severe drought may occur, and reduce the quantity of provisions produced. If the tenant should happen to die when such a crop has been produced: is he to be the *172 exclusive sufferer, though at the same time the whole estate goes over in an improved condition?
If the tenant is guilty of misconduct; if he has mis-managed for his own exclusive profit, to the injury of the estate, or the remainder-man: if he has sold any of the negroes; if he has planted nothing hut cotton and sold that for his own benefit, neither raising nor purchasing provisions ; such conduct is not faithful; it is not the management which a prudent owner of the property would have adopted, — and he must answer for it.
But if upon the whole, he has been faithful and diligent and judicious, and has not deteriorated the substantial parts of the estate, or the estate as a whole; he should not be made to suffer.
It is admitted in this case, that the general condition of the estate was improved while in Mrs. Holloway’s hands, and that it was, when delivered over, in as good plight as when she received it, though there was an accidental deficiency of corn: and I do not think her representative was accountable for that deficiency.
It is ordered that so much of the decree as held him accountable for it be reversed. In all other respects it is affirmed.
Duniíin and Dargan, CO. concurred.

Decree modified.

 See, for the doctrine applicable in such cases, Porter vs. Tournay, (3 Ves. 310); Howe vs. Dartmouth, (7 Ves. 137); Fearns vs. Young, (9 Ves. 551); Randall vs. Russell, (3 Meriv. 190); Gillespie vs. Miller, (5 Johns. Ch. 21); Westcott vs. Cady, (Id. 334); Patterson vs. Devlin, (McM. Eq. 459); Robertson vs. collier, (1 Hill Ch. 370).

 McMul. Eq. 459.

 1 Hill Ch. 370.